In the Matter of the Estate of Rosemary Yost Lissner, William H. Sandbrook, Guardian and Curator, Appellant, v. Charles V. Yost et al., Respondents.—129 S. W. (2d) 1067.

Kansas City Court of Appeals. May 8, 1939.

1122

*Ryland, Stinson, Mag & Thomson* and *Wm. E. Durham* for appellant.

*Nelson E. Johnson* for respondents.

CAMPBELL, C.—William H. Sandbrook was, by the order of the probate court of Jackson county, on December 4, 1930, appointed guardian and curator of the person and estate of Rosemary Yost, a minor eleven years of age, whom we will hereinafter call ward. Subsequently on December 19, 1930, the probate court made an order allowing the guardian and curator the sum of $12 a week for the maintenance, education and support of the ward, "not including clothing, until the further order of the court," and $100 for clothing for the ward. The ward lived in the home of her guardian and curator from December, 1930, until February, 1934, and then went to and lived in the home of her grandmother for a few months. Thereafter she lived with her present guardian and curator, Charles V. Yost, until she and Russell Lissner were married to each other in April, 1935.

In November, 1935, by consent of the parties in interest and by order of the probate court, William H. Sandbrook, hereinafter called appellant, was removed as guardian and curator and Charles V. Yost was named as his successor. The appellant made semi-annual settlement on May 22, 1939; and four annual settlements, the first on May 20, 1932; the second on May 19, 1933; the third on June 1, 1934; and the fourth on May 29, 1935. Final settlement was filed by the appellant on January 16, 1936. Yost, his ward joining, filed exceptions to the final settlement. The exceptions were amended on October 15, 1936, and the proceeding was heard in the probate court on the exceptions as amended.

Following trial and judgment in the probate court, the cause was appealed to the circuit court where it was tried and the exceptions as

to the items hereinafter mentioned were sustained in their entirety. From a judgment in accordance with the finding, appellant has appealed.

The exceptions are stated in counts 1 to 6, inclusive.

The first count is directed against numerous items charged against the estate of the ward aggregating $213.74. This total includes one dollar a week paid to the ward from December 15, 1930 to sometime in February, 1934 for carfare and spending money, sums paid for school books, school supplies, school expense, and clothing for the ward. The one dollar a week thus charged to the ward was in addition to the $12 a week allowance, the sums expended for clothing exceeded the $100 allowance. The settlements state the facts in respect to said items and each settlement was timely approved by the probate court. The settlements are therefore *prima-facie* correct. [McCune's Estate v. Daniel, 76 S. W. (2d) 403; In re Taylor's Estate, 5 S. W. (2d) 457.] And the burden was on exceptors to allege and prove the items should not have been allowed by the probate court.

The sole ground stated in the exceptions to these items was that appellant was "not entitled to deduct any allowance for carfare, school books and school supplies, as the same is included in the item of $12 per week." It will be noted the exception does not allege the ward did not receive any of the items, nor that the expenditures were not necessary for her care, maintenance and education. While the proceeding is here for trial *de novo* it must be ruled upon the grounds alleged in the exceptions. [In re Shelton's Estate, 338 Mo. 1000, 93 S. W. (2d) 684.]

When the appellant made the expenditures without an order of the probate court he took the risk of having his accounts disallowed on the ground that such expenditures were unnecessary. [Cross v. Rubey, 206 S. W. 413.] The settlements, however, disclosed the expenditures and the purpose for which they were made. With that information before it the probate court approved the action of the appellant and that approval will not be set aside in the absence of allegation and proof that the approval was erroneous. The allegation that the items under discussion were "included in the item of $12 per week" was not sustained by proof. On the contrary the settlements plainly show the items were not included in the $12 order. From which it follows the exception, in so far as it relates to the items aggregating $213.74, should have been denied.

Count one further complains of items for which appellant charged to his ward in his third annual settlement, namely, "Loretta Academy—entrance fee for ward $3;" "cash paid to Loretta Academy for 1 month's tuition and board $50;" "cash paid to Jones Store for bedding and clothing for entering Loretta Academy $16.80."

The ward was suspended from Westport High School because of truancy. Thereupon, after consulting with relatives of the ward, appel-

lant placed her in the Loretto Academy where she remained three days. The three dollar item was paid for that service, was correctly reported to the probate court and duly allowed, and there was neither pleading nor proof it should not have been paid.

The items $50 and $16.80 present a different question. In the trial in the circuit court the evidence for the exceptors disclosed that the appellant had not paid the $50 or any part thereof to the academy. Later in the trial appellant testified that the $50 item as listed was an error; that the item was charged to the estate for his services in going to six schools for the purpose of enrolling his ward therein; that in January, 1934, he prepared a voucher, stated therein the services rendered by him for which he made the charge; that he gave the voucher to his attorney at the time the latter prepared the third annual settlement. Later he testified he did not give the voucher to his attorney, and that his attorney was furnished a "sheet" on which the item was stated to be cash paid to the academy.

Appellant argues his explanation of the items was undisputed and, for that reason, we should accept the explanation as true. There is more than one reason for rejecting the explanation. Appellant's evidence concerning the voucher (vouchers were not filed with any of the settlements) was contradictory. He first said he furnished the voucher to his lawyer for use in preparing the settlement. He then said in effect that his lawyer did not see the voucher, and that he furnished the latter with incorrect information concerning the item. He ought to have known when he signed and verified the settlement that the item was incorrectly reported. The trial judge found the appellant obtained credit for the item through misrepresentation and that he in fact appropriated the $50 to his own use.

Further, in his final settlement appellant proceeded upon the theory that his settlements were true and correct except in certain enumerated particulars not here involved. For these reasons the finding of the trial court as to this item is approved.

Of the $16.80 item: The Jones Store sent merchandise for the use of the ward to the academy and then recovered all of it except "a few things that came back" to appellant's home. The true facts concerning this item were not disclosed to the probate court in any of the settlements. Nor do we find evidence showing the account was paid. This item was properly ruled in the trial court.

Count two of the exceptions objects to items amounting to the sum of $51.22 credited to appellant in his settlements for premiums paid by him upon an endowment life policy in the amount of $1000 issued to his ward in February, 1932, and in which the beneficiary was "William H. Sandbrook, Uncle." The application for the policy proposed that the beneficiary would be William H. Sandbrook, uncle and guardian of the insured.

A rider attached to the policy purporting to have been signed by

the ward, but which was not in fact signed by her, eliminated the word "guardian" from the application. The settlements report the payments of premiums but none of them disclosed that appellant had obtained the insurance nor that he was the beneficiary named in the policy. In other words, when the probate court approved the premium payments it was not in possession of the actual facts.

The appellant argues that in purchasing the policy he expended the money of his ward "for the preservation" of her estate, which he was authorized to do under the provisions of section 420, Revised Statutes 1929. In obtaining the policy he was not preserving the estate of his ward, nor was the insurance necessary for the maintenance of the ward.

The appellant further argues that the policy, although payable to him as an individual, belonged to the ward's estate. It may be that a court of equity, when the facts were made to appear, would decree the insurance was a part of the estate of the ward. Be that as it may, it will not do to say that appellant could so use the funds of his ward that a suit either at law or in equity would be required to establish her right in property purchased with her money.

The appellant testified in effect that the word "guardian" was omitted from the policy at the instance of the agent who sold the insurance. This fact, assuming it to be a fact, does not aid appellant. He purchased a contract under the terms of which he could receive a benefit in the sum of $1000, and he used the money of his ward to make the purchase. The law will not approve such action. [Cross case, *supra*.]

The facts concerning an item of $35, challenged in count three of the exceptions, are: In August, 1933, appellant took his wife, his two children and his ward to the World's Fair in his automobile. They were away from home eight days on the trip. On September 23, 1933, appellant made a check on the funds of the ward for $35, payable to her. He endorsed her name and his own on the back of the check and cashed it. In his third annual settlement he credited himself on account of the check as follows: "Ck. #117 Rosemary Yost— Expense money for World's Fair trip, eleven days." Appellant does not claim he gave his ward the amount of the check in cash. His claim of right to charge the item against the estate is shown in the following statement prepared by him:

| | |
|---|---|
| "1/5 of 1512 miles traveled at 7c per Mi. | $21.16 |
| "Five entrance fares to Fair | 2.50 |
| "Side shows and souveneers in fair grounds | 3.30 |
| "Souveneers as bought in stores in Chicago | 2.51 |
| "Meals and lodging for Minor Chicago | 5.33 |
| | "$35.00 |

"Received by W. H. Sandbrook."

The ward testified she did not receive any part of the $35. Appellant testified that while in Chicago he expended $18 in entertaining friends; that he charged his ward with "her portion" thereof and included such "portion" in the $5.33 charged the ward for meals and lodging. The third annual settlement informed the probate court that appellant had furnished $35 cash to his ward to pay the expense of a trip of eleven days. That was incorrect information.

Moreover, the statement shows no part of the item was used for the education, support and maintenance of the ward within the meaning of section 420, *supra*. The finding of the trial judge on this item is approved.

In his settlement of June, 1934, appellant charged the estate of his ward as follows: "Cash paid W. J. Ernst for plumbing repairs 6212 Prospect, $35.40," January, 1934; "Cash paid to W. J. Ernst for repairs to water coil and repairing sewer at 6212 Prospect, $38.22." After the exceptors had produced evidence showing that neither of said items had been paid to Ernst the appellant testified the statements that the same were paid to Ernst was a mistake; that in fact he employed two negroes to assist him in doing the work mentioned in the item of $38.22 and paid them $14.40; that the balance of the item was taken by him in payment of his individual work on his ward's property; that the $35.40 item was cash paid by him for materials used in his ward's property, and in payment for his work. When asked why he reported in his settlement that he had paid the items to Ernst in cash, he replied that the items were in the Ernst account on his books, and that the books were lost on a street car.

The court found the appellant had not paid either of the items to any person; that he wilfully appropriated the amount of the items to his own use.

Deferring as we should to the findings of the trial judge, we approve the ruling as to the items of $38.22 and $35.40:

Again we say that appellant in his final settlement in legal effect affirmed that his annual settlements were true and correct as to all of the items covered by the exceptions. He did not afford the probate court opportunity to correct any mistake in any settlement.

The probate court allowed appellant on May 20, 1932, the sum of $100; on August 18, 1933, the sum of $80; on June 5, 1934, the sum of $79.75; on June 27, 1935, the sum of $59.38 for his services as guardian and curator, and he received said sums from the estate of his ward. The court found appellant had so managed his ward's estate as to promote his own welfare, had "knowingly and wilfully falsely reported to the probate court" that he had expended sums for the education and support of his ward and for the care of her property when in fact he appropriated said sums to his own use. The judgment was that appellant receive nothing for his services.

There was no evidence showing that appellant was guilty of wrong-

doing prior to February, 1932, when he obtained insurance on the life of his ward and caused himself to be named as the beneficiary in the policy. He is therefore entitled to have allowance for his services from the date of his appointment to February 1, 1932, and no more.

The court at the close of the evidence denied appellant's motion for allowance of attorneys' fees for defending his settlement, and allowed appellant $25 attorneys' fees in preparing the settlement.

The final settlement was not a true and correct account; it was silent concerning the so-called mistakes; it did not inform the probate court nor the circuit court that appellant had used the funds of his ward in purchasing a policy of life insurance in which he was the beneficiary. These facts taken in connection with the fact that the trial judge, who saw appellant and heard him testify, disbelieved his evidence, requires a holding that appellant was not entitled to an allowance for attorneys' fees for preparing or defending the settlement.

The judgment is, therefore, reversed and the cause remanded with direction to overrule the exceptions as to the items totalling $213.74; the item of $3 paid to the Loretto Academy; allow proper amount for services as guardian and curator from date of appointment to February 1, 1932; sustain the exceptions as to all other items herein mentioned; each item charged against appellant to bear interest at the highest legal rate from the time it was charged to the estate of the ward; and overrule appellant's motion for attorneys' fees for preparing or defending his final settlement. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded with direction to overrule the exceptions as to the items totalling $213.74; the item of $3 paid to the Loretto Academy; allow proper amount for services as guardian and curator from date of appointment to February 1, 1932; sustain the exceptions as to all other items herein mentioned; each item charged against appellant to bear interest at the highest legal rate from the time it was charged to the estate of the ward; and overrule appellant's motion for attorneys' fees for preparing or defending his final settlement.

ON MOTION FOR REHEARING.

In motion for rehearing appellant, among other contentions says that, the item of $35.40 credited to him in his settlement of June, 1934, as having been paid W. J. Ernst, was not included in the amended exceptions filed in the probate court.

The record shows that counsel for exceptors in his opening statement said in substance that the evidence would show that Ernst did not receive any part of the item; that in reply appellant's counsel stated in effect that the item was "mistakenly described" in the settlement. "That will all be detailed." Thereafter exceptors' counsel

suggested that he desired to amend the exceptions so as to include the item. Thereupon there was colloquy between court and counsel in which appellant's counsel indicated he was of the opinion amendment of the exceptions should not be allowed. Thereafter evidence concerning the item was introduced by both parties, as shown in the main opinion. Thus the conduct of the parties indicates they thought the item was in issue.

The assignment of error says the court erred in finding against appellant on the item "because,

"(1)   The evidence adduced by respondents was insufficient to establish a cause of action in favor of respondents and against appellant;

"(2)   The overwhelming weight of the competent evidence was in favor of appellant and against respondents."

Plainly the assignment challenges the sufficiency of the evidence to support the finding, not the failure of the exceptions to present the question and, for that reason, the question was not discussed in the main opinion.

Other questions urged in the motion are fully covered in the main opinion.

The motion for rehearing is overruled. *Sperry, C.,* concurs.

PER CURIAM:—The foregoing opinion of CAMPBELL, C., is adopted as the opinion of the court. The motion for rehearing is overruled. All concur.