[Civil Nos. 4249, 4250. Filed December 16, 1940.]

[108 Pac. (2d) 391.]

In the Matter of the Estate of THOMAS C. NOLAN, Deceased. GRACE NOLAN, as Executrix of the Last Will and Testament of THOMAS C. NOLAN, Deceased, Appellant, v. HONORA M. NOLAN, Appellee.

HONORA M. NOLAN, Appellant, v. GRACE I. HUM-PHRIES, Also Known as GRACE NOLAN, as Executrix of the Last Will and Testament of THOMAS C. NOLAN, Deceased, Appellee.

Messrs. Fennemore, Craig, Allen & Bledsoe for Appellant in No. 4249 and for Appellee in No. 4250.

Mrs. E. G. Monaghan and Mr. Thomas A. Flynn for Appellee in No. 4249 and for Appellant in No. 4250.

ROSS, C. J.—These are cross-appeals, the first being taken by Grace Nolan as executrix of the last will and testament of Thomas C. Nolan, deceased, and the other by Honora M. Nolan, surviving wife of the decedent. Both appeals are from the order of the court settling the first report and account of the executrix, filed October 24, 1938.

The first appellant complains of the court's order charging her with certain property as assets of the estate, not included in her inventory and appraisement, and in disallowing certain items of expense that she had incurred as executrix. And the other appellant (surviving wife) is not satisfied with the court's order settling such account, claiming the court should have charged the executrix with more assets than were charged, and that the order allowed certain claims of expenses that should not have been allowed.

Before proceeding with the discussion of the questions here involved, we call attention to causes Nos. 4129, *ante,* p. 353, 108 Pac. (2d) 385, and 4130, *ante,* p. 361, 108 Pac. (2d) 388, between the same parties, decided December 9, 1940. In the first of these cases the question was whether Thomas C. Nolan's will was valid and we held that it was. In his will he gave everything he had to Grace I. Humphries, to whom we hereafter refer as Grace Nolan. In Cause No. 4130 the question was as to whether a Mexican divorce obtained by Nolan from Honora M. Nolan was void, and we held that it was. Another question was whether Honora being the surviving wife was entitled to a family allowance and we held she was and affirmed

the lower court's judgment giving her an allowance of $100 per month, to begin with the date of Nolan's death, with no time limit. The termination of the allowance is fixed by statute. Section 3975, Revised Code of 1928, provides that the allowance may, in the discretion of the court, take effect from the death of the deceased and shall be allowed during the progress of the settlement of the estate, except where the estate is insolvent, in which case it is limited to one year after granting letters. In the same section the widow's allowance is given preference to all other charges on the estate except funeral charges and expenses of administration.

Thus it is seen that Honora's interest is that of a preferred creditor only. Beyond seeing that enough property of the estate is accounted for to satisfy her claim, she is not interested. Of course, the executrix is not personally liable for such widow's allowance but is liable in her representative capacity for the allowance and should inventory as assets of the estate all property of which the decedent died possessed. Whatever is left of the estate after paying creditors, taxes, funeral charges, expenses of administration and the widow's allowance, under the will, goes to the executrix Grace Nolan.

Nolan died in Phoenix, Arizona, February 13, 1936, and his will was probated and letters testamentary issued by the superior court of Maricopa county to "Grace Nolan" on April 2, 1936. The decedent and Grace Nolan, in 1932 and soon after they had gone through the form of a marriage, moved from Arizona to Cumming county, Nebraska, and lived there as husband and wife until the latter part of 1935, when they came to Phoenix to live. Nolan died possessed of property in both Nebraska and Arizona.

On or about January 3, 1939, the putative widow (executrix) petitioned the county court of Cumming

county, Nebraska, to issue ancillary letters of administration to Hird Stryker, of Omaha, for the administration of Nolan's estate in said state, consisting, as alleged in the petition, of real estate of the value of $1,000 and personal property of the value of $10,000. Thus we see the estate's property was in two jurisdictions, which fact is essential to keep in mind in connection with the facts showing how the property was handled and how it should have been handled.

██ While the law is that the title to personal property, wherever located, upon the death of its owner passes to his domiciliary representative, the latter's letters authorize and empower him to administer the estate in his jurisdiction only; hence the necessity for ancillary administration in Nebraska. The assets of the estate in Nebraska should have been ascertained, determined and disposed of according to the laws of that state and if after that was done there were left any assets they should have been transmitted to the domiciliary representative for distribution in accordance with the law of such jurisdiction. However, Grace Nolan, acting in her individual capacity, took possession and control of certain Nebraska property long before application for ancillary letters was made, and she now claims that she did so as the owner of such property and not in her representative capacity. She withdrew from Nebraska banks the sum of $1,548.34 and sold personal property, consisting of household goods, crops, machinery, livestock and miscellaneous articles for $3,507.14, and collected some debts owing the estate, all of which she claims belonged to her as an individual and not as legatee under the will. The court found these assets were the property of the estate and charged her with them accordingly. She complains of the court's ruling and contends that under the facts and the law such property belonged to her personally.

■■ The ruling of the court requiring the executrix to list such property as assets of the estate is appealed from by her in her official capacity and not as an individual. It is evident that she was not prejudiced in her representative capacity by the court's ruling. By such ruling the value of the estate was enhanced several hundred dollars and, by the same token, if it was hers individually she was injured several hundred dollars. If the ruling had been adverse to the estate, she could have appealed and the expense of such appeal would have been a proper charge against the estate. But she cannot appeal in her representative capacity from an order affecting her personally and charge the expense thereof to the estate. However, neither the notice of appeal nor the bond on appeal is given by her in her individual capacity. In the *Estate of Sims*, 14 Ariz. 1, 123 Pac. 31, we held that an administrator with the will annexed might not prosecute, at the expense of the estate, an appeal from an order of the court disallowing a claim against the estate. If a personal representative could prosecute an appeal from an order and judgment of the court in favor of the estate and against adverse claimants at the expense of the estate, much of the assets might be consumed in that way. His province is to protect the estate and not the claimed interests of third parties or strangers, especially at the expense of the estate.

"A personal representative may not appeal in his representative capacity where he is interested or aggrieved only in his individual capacity, nor may he appeal as an individual where his only interest or prejudice is as representative." 4 C. J. S., Appeal and Error, p. 372, sec. 193.

There being no appeal by Grace Nolan individually, the several assignments of error (from 1 to and including 12) directed at the court's rulings, ordering the

inclusion of the personal property as assets of the estate, cannot be considered on her appeal as executrix.

As to these several items appellant-executrix claims the trial court had no jurisdiction in the accounting proceeding in probate to determine, as between the estate and a stranger, conflicting claims as to the ownership of the property. We have held in three cases that the probate court may not try the title to property claimed by a stranger as against the estate. *Estate of Tamer,* 20 Ariz. 232, 179 Pac. 644; *Estate of Baxter,* 22 Ariz. 91, 194 Pac. 333; *Horne* v. *Blakely,* 35 Ariz. 39, 274 Pac. 173. The remedy in such cases usually is an action either at law or in equity, but in these cases "the stranger" was someone other than the personal representative.

██ Here it is the personal representative who claims the property does not belong to the estate but to herself individually. If the general rule in such a case is the correct one, Grace Nolan individually would have to bring a civil action against Grace Nolan as executrix, or *vice versa,* to determine the ownership of the property. She would have to sue herself and if she lost individually the property could be inventoried as belonging to the estate and be subject to administration, otherwise not.

In the annotation to *Security-First National Bank* v. *King,* 46 Wyo. 59, 23 Pac. (2d) 851, 90 A. L. R. 125, 134, it is said:

"A majority of the jurisdictions follow the rule that a court sitting in probate has jurisdiction to determine the title to property which the personal representative claims in his own right."

██ Our probate law is taken from California and we have frequently followed the courts of that state in its construction. In *Stevens* v. *Superior Court,* 155 Cal. 148, 99 Pac. 512, 516, the same question we have here was involved and the court said:

"In support of his claim that the superior court is without jurisdiction to try and determine the issues thus made, plaintiff invokes the well-settled rule that the superior court sitting in probate is without jurisdiction to try the question of title to property as between a representative of the estate and strangers to the estate. He fails, however, to point out what other remedy is available to those interested in the estate where the so-called stranger is himself the executor or administrator holding possession of money or other personal property in fact belonging to the estate, but claimed by him in his individual capacity adversely to the estate. There is no statutory authority for the maintenance of an independent action by them against him for the recovery of the property, he cannot be compelled to commence, nor could he maintain, an action against himself therefor, and the fact that he claims to be the owner of property which they claim belongs to the estate is no ground for his removal from the office of executor or administrator. . . .

"It seems clear to us that the probate court must necessarily have the power to incidentally try and determine such an issue between the executor or administrator and the estate in the matter of the settlement of his exhibits and accounts. The amount of money belonging to the estate received by an executor or administrator is one of the matters he is necessarily required to state in his accounts, and the correctness of his accounts in that regard is one of the matters to be determined by the court as between him and the estate on the settlement thereof. It cannot make any difference in this connection that the executor or administrator claims that certain money received by him is his property, and not the property of the estate. If it is in fact the property of the estate, he will not be heard to deny that he received it otherwise than as a representative of the estate, and the determination of the question of ownership is essential to a determination of the main and ultimate issue on the settlement of the accounts, *viz.*, the question of their correctness. . . . We think there can be no doubt that the superior court sitting in probate has jurisdiction to determine as against an executor the amount of money or property

of the estate that has come into his hands, for the purpose of charging him therewith, and in determining that question to determine all issues necessarily incidental thereto. . . . ''

In *Security-First National Bank* v. *King, supra,* the court said [46 Wyo. 59, 23 Pac. (2d) 854, 90 A. L. R. 125]:

''It is contended by counsel for defendants that the trial court, sitting in probate, had no jurisdiction to determine the title to the property in dispute, and that it was right in so holding. It is true that this is the rule in cases in which a third party claims property as against the representative of the estate. 24 C. J. 942. But, due mainly to the necessities of the case, the rule is, by the weight of authority, otherwise when the representative himself claims such property. . . . ''

In this last case, the jurisdiction of the court sitting in probate to try the title between a personal representative and the claimant when they are one and the same person is based, in part, on section 88–2704, Revised Statutes of Wyoming 1931, which is the same as our section 4054, Revised Code of 1928, reading as follows:

''§ 4054. *Objection to account.* When an account is rendered by an executor or administrator any person interested may appear and, by objections in writing contest the account or any item therein. The court may examine the executor or administrator and hear evidence, and if he has been guilty of neglect, or has wasted, embezzled or mismanaged the estate, his letters shall be revoked.''

Other courts sustaining the power of the probate court to determine the title in such cases likewise base it on similar statutes. See 90 A. L. R. 134, *supra.*

In *Re Vucinich's Estate,* 3 Cal. (2d) 235, 44 Pac. (2d) 567, 570, the court very clearly states the rule, as to when the title to property may be tried in probate and when it may not, as follows:

" . . . The power to determine as against the executor what money or other property belonging to the estate has come into his hands is implied in the power to settle his accounts and determine what remains in his hands to be distributed. *Estate of Burdick,* 112 Cal. 387, 44 Pac. 734; *Stevens* v. *Superior Court,* 155 Cal. 148, 99 Pac. 512. This power, however, is limited, in cases where title thereto is in controversy, to those where the executor or other personal representative claims the property in his individual capacity. *In re Estate of Kelpsch,* 203 Cal. 613, 265 Pac. 214; *Bauer* v. *Bauer,* 201 Cal. 267, 256 Pac. 820; *In re Estate of Roach,* 208 Cal. 394, 281 Pac. 607. It is undoubtedly the rule that the superior court sitting in probate is without jurisdiction to try the question of title to property as between a representative of the estate and strangers to the estate. *Ex parte Casey,* 71 Cal. 269, 12 Pac. 118; *Estate of Haas,* 97 Cal. 232, 31 Pac. 893, 32 Pac. 327. It will be readily noted from these citations that the line of demarcation between jurisdiction and nonjurisdiction of the probate court to determine what money or property, title to which is disputed, belongs to the estate, is determined by the status of the claimant. If it is claimed by the executor in his individual capacity, the probate court has power to consider and determine the validity of that claim. But if claimed by or on behalf of a stranger to the estate, the probate court has no jurisdiction to determine the controversy. . . . "

See, also, *In re Inghilleri's Estate,* 27 Cal. App. (2d) 664, 81 Pac. (2d) 568.

There are some cases holding to the contrary but they are fewer in number and not as well reasoned, as we conceive it.

It is next contended by the executrix that the title to the Nebraska property should be determined by the laws of that state. What she was ordered to list as assets of the estate was either money or personal property which was in Nebraska at the time of Nolan's death. Letters testamentary had been issued to her by the Arizona courts and she went to

Nebraska, and, without obtaining ancillary letters from that state, took possession of said personal property and claimed it as her own. Some of it she brought into Arizona as is clearly shown, but whether or not she brought it all or left some of it in Nebraska is not definitely shown. We think it makes no difference where it was for according to law it followed her. While it is true the property in Nebraska should have been administered in that state in order to protect local creditors, heirs and devisees, if any, she ignored the law in that respect. However, if there were any local creditors, devisees or heirs in Nebraska, there is no mention of them in the record. Under such circumstances, the following statement of the law was controlling:

"The domiciliary representative becomes invested with the title to all the personal property of the deceased, wheresoever situated, for the purpose of collecting the effects of the estate, paying the debts and making distribution of the residue according to the law of the place or directions of the will, as the case may be. He continues to hold such title until an ancillary administrator is appointed, when the title to the estate in the ancillary jurisdiction vests in the latter." 21 Am. Jur. 854, sec. 861.

It appears that originally the executrix employed one John C. Lee as her attorney and that he represented her for about one year. He prepared and filed petition for probate of the will, looked after the publication of notice to creditors, etc. He did little or nothing else. For such services she paid him the sum of $100 which she charged against the estate. On objection thereto by the widow, the court allowed the executrix a credit of only $50 for this item. This ruling is assigned as error. Fees of attorneys employed by the personal representative of an estate are classified as expenses of administration. Section 4049,

Revised Code of 1928, provides that such representative

"shall also be allowed reasonable fees paid or contracted to be paid to attorneys at law for services to him, and an attorney who has rendered such services may apply to the court for an allowance as compensation therefor. Upon the hearing, a reasonable allowance shall be made, and the court shall order the payment thereof out of funds of the estate."

In the *Estate of O'Reilly,* 27 Ariz. 222, 231 Pac. 916, 918, we went into the question of fees paid or agreed to be paid by the personal representative, and announced the following rule:

"What would constitute a reasonable fee in a given case is a matter which is peculiarly within the knowledge of the court before which the estate was probated, and, in the absence of the abuse of sound discretion of the court sitting in probate, this court, as it has many times held, will not disturb the findings of the lower court."

Under the facts, we do not feel that there was an abuse of discretion in fixing the Lee fee.

The executrix' present attorneys represented her in the will contest and for such services she has paid them, as appears in her account, $850. The court, on objections by the widow, disallowed such item as not being a legal charge against the estate. The executrix assigns the ruling as error. In the contest one of two people stood a chance to get all of the estate. If the widow won the contest, she as survivor would take the assets of the estate, and if Grace Nolan was able to sustain the will, she would get everything. In the *Estate of Sullivan,* 51 Ariz. 55, 74 Pac. (2d) 346, 349, we held that the administrator had the right, at the expense of the estate, to employ counsel to sustain the validity of the will against attack by a legatee thereunder after its probate and that, if he acts in

good faith, he is entitled to receive from the estate his necessary expenditures in defending the attack on the will. We also said, quoting from *Butt* v. *Murden,* 154 Va. 10, 152 S. E. 330, 69 A. L. R. 1048:

" 'It is impossible to examine the cases and formulate therefrom rules which are applicable to all cases. Positive and dogmatic pronouncements should be avoided. Much depends upon the peculiar circumstances. If the executor acts in good faith, he is generally entitled to reasonable allowances. In most contests, however, it is merely a question between persons who take the estate if the will is established and those who will take it under the law of descents and distributions, if not established. In such cases the executors should leave these interested parties to conduct the litigation at their own expense and to abide its results without imposing substantial charges against the estate represented by the executor.' "

We think the executrix was defending the will entirely as devisee and legatee, and not in her capacity as a trustee of the estate; that, therefore, she, and not the estate, should pay the attorneys. The executrix was not trying to preserve the property for the estate but solely for herself. Notwithstanding, the court found that the fee of $850 paid attorneys for defending the contest of the validity of the will "as an improper charge against the estate," it nevertheless proceeded to allow such attorneys a fee of $500 "in the matter of the will contest" and ordered it charged against the widow's allowance if and when the Supreme Court should sustain such widow's family allowance. We cannot understand this action of the court unless it was by indirection an effort to place the burden of attorneys' fees upon the widow in the will contest. That, however, is taken care of by this court in its opinion in Cause No. 4129 wherein the trial court is directed to allow the executrix a reasonable attorneys' fee against such contestant (the widow).

■ The executrix in her account showed an expenditure of $150 to her attorneys for services in opposing petition for widow's allowance. This item was disallowed as not expense incurred in the care, management and settlement of the estate. This ruling is assigned as error. As the only parties concerned in this allowance were the executrix as devisee and legatee, and the widow as the surviving heir, we think the ruling stated above concerning attorneys' fees in defending will contest is applicable and that the court did not err in disallowing this item as a proper expense of the estate.

■ The executrix in her account showed an expenditure of $60 for a tombstone or marker for decedent's grave, which item was disallowed. This ruling she claims was erroneous. We think in view of the condition of the estate as to solvency, the item should have been allowed. The rule is stated in 24 Corpus Juris, 308, section 929, as follows:

"The expense of erecting a tombstone or monument at the grave of decedent is usually allowed against the estate, especially where the estate is ample, such expenditure being sometimes considered a part of the 'funeral expenses.' . . . "

See *Nowland* v. *Vinyard,* 43 Ariz. 27, 29 Pac. (2d) 139.

Another item in the account of $113.10 for authenticated copy of divorce proceedings in Mexico was disallowed. This ruling is assigned as error. This item has been ordered allowed in Cause No. 4129. See opinion.

The executrix in her account showed that she had advanced $394.83 individually towards payment of expenses of administration. This sum was disallowed, the court's finding being that she did not advance such sum individually toward the payment of expenses of administration. The evidence on this item is very meager. It consists of the statement by the executrix

that she advanced it, without any details as to when, or to whom, or on what account. We think that the court must have concluded that it was not necessary for her to make such personal advance to the estate, since the record was pretty clear that her actual receipts as executrix were far in excess of her expenditures. In other words, taking into account all of the money that she had withdrawn from Nebraska and which she claimed as her individual property, but which the court has found belonged to the estate, there was no occasion that she advance any of her individual funds to the estate.

The executrix in her account had charged the estate with $37, paid a firm of attorneys in Walla Walla, Washington, for telephone and telegraph expenses in connection with the will contest. There is no explanation as to how or why these items were necessary or that they were for the benefit of the estate. We think the court's order disallowing this item was right.

The executrix was ordered to account for certain silverware. We agree with her contention that there was no competent evidence showing such silverware was an asset of the estate. Such order is accordingly set aside.

We have disposed of all of the assignments made by the executrix and we will now consider the cross-assignments by Honora M. Nolan, the widow. She complains because the court refused to order the executrix to charge herself (1) with the proceeds of a sale of "household goods and other miscellaneous items belonging to the said estate" in the sum of $1,329.30; (2) with a $3,000 note and mortgage dated February 25, 1932, and made to Thomas C. Nolan by D. H. McDonald and wife, due three years after date; (3) with a promissory note for $500, dated November 18, 1930, made by one Norman B. Conway to Thomas C. Nolan;

(4) with a note dated December 1, 1929, for $250 by same party to Nolan; and (5) with $535 as the value of a second-hand Chevrolet automobile instead of $385. The court found that the McDonald note and mortgage had been determined by a judgment of the superior court of Maricopa county to be invalid; also that the two Conway notes were of no value, and that the $385 was the reasonable value of the automobile. The evidence seems to justify these findings. If the item of $1,329.30, alleged to be proceeds of sales of household goods, etc., is charged to the estate, it would appear to be charged twice. Household goods were part of the property from which $3,507.14 were realized and which the executrix was ordered to include in her accounts as assets.

She next objects to the costs allowed the executrix in the will contest case. Whatever the court allowed in the way of costs and expenses in that case cannot be reviewed in this proceeding to settle the report and account of the executrix.

Her assignments Nos. 26, 27, 28 and 29 are directed to the court's rulings on admission of evidence. We see no merit in these assignments.

We think the costs and expenses of the will contest, including attorneys' fees, should be deducted from the widow's allowance, as indicated in the court's judgment, and it is so ordered.

The judgment of the lower court as modified herein is affirmed.

LOCKWOOD and McALISTER, JJ., concur.