223 P.2d 907

**DAWSON v. McNANEY.**
No. 5163.

Supreme Court of Arizona.

Nov. 13, 1950.

George M. Sterling, of Phoenix, for appellant.

Moore & Moore, of Phoenix, for appellee.

GIBBONS, Superior Judge.

This is an appeal from a judgment of the Superior Court of Maricopa County, decreeing Bertha May McNaney, formerly Bertha May Dawson, hereinafter called plaintiff, to be the owner of an undivided one-half interest in and to certain real and personal property described in the pleadings, directing the sale of said property, and the proceeds thereof equally divided between the plaintiff and Timothy T. Dawson, herein called defendant.

The undisputed facts pertinent to a determination of this case are that plaintiff and defendant were formerly husband and wife, and during coverture purchased the real property involved under contract for $2,800, with a down payment of $300, and the balance in monthly installments, from community earnings. The down payment above specified and the purchase price of the furniture was derived from an award of the Industrial Commission for permanent injuries received by defendant while employed by the City of Phoenix in 1937. On October 5, 1939, plaintiff transferred by quit-claim deed the legal title of her interest in the real property to the defendant, and simultaneously defendant executed a quit-claim deed reconveying the same property back to plaintiff.

On February 22, 1941, plaintiff filed complaint for divorce, defendant filed a waiver, and two days later a decree was entered. No reference was made to the real and personal property involved in this action, either in the complaint or the decree of divorce.

On September 16, 1947, plaintiff filed her complaint in the instant action alleging that the property involved herein was acquired during coverture, was community property at the time of the divorce, and no provision having been made in said decree for the division thereof, the plaintiff and defendant had held and now hold such property as tenants in common, each possessed of an undivided one-half interest therein. That at all times from the entering of said decree defendant, with plaintiff's consent, has been in possession thereof, and now refused to permit plaintiff entry thereon, or to make partition thereof. Defendant, by way of answer, makes no denials, but affirmatively alleges as defenses:

1. That the amended complaint fails to state a claim upon which relief can be granted;

2. That the alleged cause of action accrued more than six years before the commencement of said action, and is, therefore, barred by the provisions of Chapter 29, Arizona Code Annotated 1939, Statute of Limitations;

3. Recites the execution, delivery and recording of the quit-claim deed from plain-

tiff to the defendant, above referred to, and alleges the defendant is now, and at all times since October 5, 1939, has been the owner and in possession of the real estate as his sole and separate property.

Plaintiff's reply (1) admits execution of said deed, but denies she thereby transferred her interest to defendant, as they were husband and wife and living on the property at the time, and that on many occasions prior to the execution of the deeds in question defendant requested and attempted to persuade plaintiff to execute to him a quit-claim deed to said property so that he could claim full tax exemption and relieve the community from the payment of taxes thereon; (2) alleges that, in response to such repeated requests, plaintiff executed said quit-claim deed and delivered the same to defendant; (3) that plaintiff did not intend to transfer and defendant did not intend to receive the beneficial interest of plaintiff in said property; (4) that no consideration was paid by the defendant, and that both parties intended at the time of execution of said deed, and thereafter, said real property should remain the community property of the parties.

On the date of trial plaintiff's amended reply to answer was stricken from the files, having been filed too late, and defendant's motion for leave to file amended answer was denied. Other facts appearing to be material for the purposes of this opinion will be stated as particular phases are developed.

By written findings of fact the court found:

A. Plaintiff and defendant prior to February 24, 1941, were husband and wife, and acquired the property in question during their marriage, and said property was, until the decree of divorce was entered, the community property of said parties.

B. That the divorce decree made no disposition of said community property.

C. That defendant by persuasion and by the abuse of his confidential relation with the plaintiff induced the plaintiff to execute the quit-claim deed mentioned in defendant's answer, and plaintiff did not by said deed convey to the defendant her beneficial interest in the real property involved.

D. That a fair partition could not be made without depreciating the value thereof, and therefore a sale of the property is more beneficial to the parties.

E. That defendant since the divorce has been in possession of the real property, has used the same as a residence, and that the reasonable value of such use has at all times been equal to or in excess of any payments made by the defendant upon the indebtedness existing against such premises.

By merged and overlapping assignments of error and propositions of law, some of which are very indefinite and uncertain, defendant asserts error in the findings of fact, conclusions of law, and judgment which may be summarized as follows:

(a) In denying defendant's plea to the jurisdiction and plea of res judicata (de-

fendant's theory being that the court was without jurisdiction in the premises in that the disposition of the property should have been accomplished in the original divorce action, and not having been adjudicated was res judicata in the instant suit);

(b) In failing to find plaintiff's cause of action was barred by the statute of limitations;

(c) In finding the property was community property at the time of the divorce, for the reasons: (1) the moneys that purchased said property were the sole and separate property of defendant; (2) plaintiff prior thereto had deeded said property to defendant; (3) no showing said deed was obtained by fraud;

(d) He who seeks equity must do so with clean hands and where parties are in pari delicto equity will not intervene;

(e) In denying defendant the right to file amended answer and offer proof thereunder;

(f) Judgment is contrary to law and equity, and the evidence or weight of the evidence does not support findings of fact and judgment.

■ The challenge to the court's jurisdiction is without merit. We hold that as no property or property rights were mentioned in the divorce proceedings and judgment, under our law and the decisions of this court, no property adjudication was had and the provisions of Sec. 27-805, A.

C.A.1939, apply and the community property, if any, from the date of said decree was held by the parties as tenants in common. Rothman v. Rumbeck, 54 Ariz. 443, 96 P.2d 755; Stevens v. Stevens, 70 Ariz. 302, 219 P.2d 1045.

■ The second point urged is that plaintiff's cause of action is barred by limitation, to which plaintiff interposes the objection that defendant's allegations relating to this matter are too indefinite and uncertain to meet the requirements of pleading limitations as a defense. The complaint on its face does not show the claim sued upon was barred by limitations, and the particular section or sections relied upon by the defendant are not set forth. In such a case the rule heretofore announced by us applies: " * * * The law seems to be that a mere reference to the statute, as by chapter, is so indefinite and uncertain as to not properly raise the question of limitations, 17 R.C.L. 992, § 370; 337 C.J. 1219, § 726; 1221, § 727; * * *." Hyder v. Shamy, 45 Ariz. 130, 134, 40 P.2d 974, 976.

The defendant having failed to properly plead limitations, this defense, if it in fact existed, has been waived.

■ The real issue to be determined on this appeal is whether the property described in plaintiff's amended complaint was community property of the parties, or the separate property of the defendant at the time the divorce was granted. Defendant's claim that this is his separate property is based upon the theory that the

down payment of $300 on the real estate and $400 of the purchase price of the furniture was paid from separate funds received as an award for personal injuries.

Sec. 63-302, A.C.A.1939, defines the separate property of the husband as, "All property, both real and personal, * * * owned or claimed by him before marriage and that acquired afterward, by gift, devise or descent, * * *." Awards for personal injuries are not expressly included therein. Such an allowance, however, is based upon compensation for loss of earning capacity, which during coverture is related to the earning power of the community.

"* * * any act by which either husband or wife is deprived of the capacity to render services diminishes the capacity to accumulate community property. * * *" Martin v. Southern Pac. Co., 130 Cal. 285, 62 P. 515. See, also, Doyle v. Doyle, 44 Cal.App. 259, 186 P. 188.

In the cases of Fox Tucson Theaters Corp. v. Lindsay, 47 Ariz. 388, 56 P.2d 183, and City of Phoenix v. Dickson, 40 Ariz. 403, 12 P.2d 618, we held that the proceeds from actions for personal injuries sustained during coverture are community property. We hold that the moneys received by defendant from the Industrial Commission were community and not his separate funds. To like effect see Northwestern Redwood Co. v. Industrial Acc. Comm., 184 Cal. 484, 194 P. 31; Pickens v. Pickens, 125 Tex. 410, 83 S.W.2d 951; Doyle v. Doyle, supra; and

text and cases cited in Principles of Community Property, de Funiak, vol. 1, sec. 68.

Defendant's second claim supporting the separate property theory is that the plaintiff transferred to defendant all of her beneficial interest in and to the real property involved herein by her quit-claim deed. If she did transfer such interest then the land was his sole and separate property and her cause of action must fail. If on the other hand she did not transfer her beneficial interest by such deed she still owned her community share of the property at the time of the divorce and thereafter as a tenant in common with the defendant.

Both parties admit the deed from plaintiff to defendant, an ex-serviceman, was for the purpose of obtaining tax exemption, and not as a sale or gift of the property involved. The quit-claim deed from the defendant to plaintiff, executed simultaneously with the above mentioned conveyance, is persuasive on this point. Either the parties by exchange of deeds, if both were delivered, were in the same position as they were before, or the unrecorded deed having failed to actually transfer ownership the defendant held the naked title of the property in trust for the plaintiff. In either case, each party owned his or her community interest at the time of the divorce. There is a sharp conflict in the testimony as to whether there was a property settlement between the parties at the time the marriage was dissolved. Plaintiff maintains that the defendant re-

quested her not to mention the property to her lawyer and he would give her half of it anyway, and the defendant insists that she promised to give him the house and furniture and did return his deed. The lower court was the trier of the facts and resolved these controversial factual questions in favor of the wife and we are bound thereby. Tripp v. Chubb, 69 Ariz. 31, 208 P.2d 312 and cases cited.

While plaintiff's brief refers to a resulting trust, we believe this is not fatal. The allegations of the amended complaint, the evidence, and the findings of fact of the court, fairly construed, support and find the necessary elements of a constructive trust. In MacRae v. MacRae, 37 Ariz. 307, 294 P. 280, 282, we said: "A constructive trust is one which does not arise by agreement or from the intention of the parties, but by operation of law, and fraud, actual or constructive, is an essential element thereto. Actual fraud is not always necessary, but such a trust will arise whenever the circumstances under which the property was acquired make it inequitable that it should be retained by the one who holds the legal title. These trusts are also known as trusts ex maleficio or trusts ex delicto. Their forms and varieties are practically without limit, as they are raised by courts of equity whenever it becomes necessary under the particular circumstances of the case to prevent a failure of justice, but the element of fraud, either actual or implied, must always be present."

It is urged by defendant that the deed was not obtained by fraud, but under certain circumstances this is not controlling when confidential relations exist between the parties.

"There is nothing in the evidence to justify a holding that plaintiff did anything as preliminary to or in connection with the conveyance in question fraudulent in its nature, and, were she a stranger to defendant, no constructive trust could be sustained. But it is urged that when confidential relations exist between two parties, the rule is different, and, even though no active fraud by the grantee in the procuring of a conveyance be shown, the mere existence of the confidential relation, *when coupled with a promise to reconvey,* creates a constructive trust.

"The cases on this point are not in entire harmony. We are of the opinion, however, that the better rule is that contended for by defendant. The relationship of husband and wife is confidential in the highest degree. It is presumed by the law that they act with one another in absolute confidence, that each will be faithful to the other's interests, and that they need not take the precautions in dealing with each other that are customary between strangers. If it were required that in their mutual relations they must deal with each other at arms' length, the marital status would become intolerable. As is well said in Brison v. Brison, 90 Cal. 323, 27 P. 186, 190:

" 'The influence which the law presumes to have been exercised by one spouse over the other is not an influence caused by any act of persuasion or importunity but is that influence which is superinduced by the relation between them, and generated in the mind of the one by the confiding trust which he has in the devotion and fidelity of the other. Such influence the law presumes to have been undue, whenever this confidence is subsequently violated or abused.' " MacRae v. MacRae, supra. See, also, Giovani v. Rescorla, 69 Ariz. 20, 207 P.2d 1124.

▮▮▮▮ The admitted ultimate purpose of plaintiff's quit-claim deed to defendant was to defraud the state of legitimate taxes.

"The maxim 'He who comes into equity must come with clean hands' means 'whenever a party, who, as actor, seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him in limine; the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy.' Pomeroy, Equity Jurisprudence (3d Ed.) par. 397. * * *

\* \* \* \* \* \*

"There is, however, admittedly one exception even to the rule as laid down by us. When the parties are not in pari delicto, courts of equity will at times intervene for the protection of the less guilty one. Is there a test by which the application of this last-named principle may be determined? We are of the opinion such a test is well stated in the case of Chamberlain v. Chamberlain, 7 Cal.App. 634, 95 P. 659, 661:

" 'The law is more indulgent to human infirmity, and less tolerant of deliberate and obtrusive depravity. A. Cannot lay a trap for B., secure his confidence, induce him to make a conveyance of his property in the expectation that it will be returned, and thereafter retain the fruits of his perfidy on the ground that B. too readily yielded to temptation to save himself at the possible expense of creditors. The greater offense of the tempter overshadows and renders innocuous the weakness of the one of whom advantage is taken.' " MacRae v. MacRae, supra. See, also Coleman v. Coleman, 48 Ariz. 337, 61 P.2d 441.

▮▮▮ Guided by these rules, are the parties in pari delicto? Defendant occupied the closest confidential relationship to the plaintiff; was twenty years her senior; apparently handled all business affairs, except the payment of the household expenses; and even failed to inform her of the Industrial Commission award. For months he repeatedly insisted that she give him a deed. Plaintiff further testified and it was not denied by the defendant that he accused her of not trusting him, and as an added inducement promised to, and did, take her to Louisiana to visit her sister. To avoid constant marital difficulties and appease her insisting husband, she yielded to the

temptations offered and granted his request.

In Sliman v. Moore, 198 Ark. 734, 131 S.W.2d 1, at page 3, the court said: " * * * While courts will not, as a rule, measure equity between wrongdoers, they are quite as careful to deny to any man the advantage of his own wrong. Langley v. Devlin, 95 Wash. 171, 163 P. 395, 4 A.L.R. 32."

We are of the opinion that the parties are not in pari delicto and defendant should not be permitted to retain the fruits of his perfidy because his wife yielded to his persuasion and domination. To hold otherwise would not only defeat the ends of justice, but perpetrate a fraud that would foreclose the state from collecting at least a portion of the taxes that are justly due.

The remaining assignments of error are without merit. It appears from the record before us that rulings of the trial court in the matters complained of were correct, and that there is competent evidence therein to support the findings of fact and judgment rendered.

Judgment affirmed.

LA PRADE, C. J., and UDALL, STANFORD and DE CONCINI, JJ., concurring.

Note: Justice M. T. PHELPS being disqualified, the Honorable J. SMITH GIBBONS, Judge of Superior Court of Apache County, was called to sit in his stead.