436 P.2d 922

Andres O. CORDOBA, Appellant,

v.

George WISWALL as Executor of the estate of Mary Greene Wiswall, deceased, Appellee.

No. 2 CA–CIV 415.

Court of Appeals of Arizona.

Feb. 1, 1968.

Rehearing Denied March 18, 1968.

Review Denied April 16, 1968.

Murphy & Vinson, by James M. Murphy, Tucson, for appellant.

Gentry, McNulty, Toci & Borowiec, by Philip E. Toci, Bisbee, for appellee.

HATHAWAY, Chief Judge.

Andres Cordoba has appealed from a summary judgment granted to George Wiswall, executor of the estate of Mary Greene Wiswall, deceased, defendant below. The matter is before us for the second time, the first appeal having been dismissed by this court, on its own motion, for the reason that it was prematurely taken. See Cordoba v. Wiswall, 5 Ariz.App. 265, 425

P.2d 576 (1967). The appellant's two-pronged attack on the judgment raises the following questions:

1. Did the existence of a material, genuine issue of fact preclude the granting of summary judgment?

2. Was the motion for summary judgment improperly granted for the reason that certain "indispensable parties" were not given notice of the hearing on the motion and were thereby deprived of an opportunity to participate therein?

Review of the challenged ruling necessitates a rather detailed examination and analysis of the proceedings below.

## PROCEEDINGS

Since the appellant's initial complaint was dismissed for failure to join indispensable parties, with leave granted to amend, we need not concern ourselves with the allegations contained therein but direct our attention to the claim for relief asserted in the amended complaint against the appellee. The complaint was denominated "complaint for declaratory judgment and to impress trust." The appellee, as executor of the estate of Mary Greene Wiswall, deceased, and certain children and grandchildren of the decedent were named as defendants. The appellant alleged double payment for certain shares of stock and sought to have the appellee-executor declared a constructive trustee of either a part or all of the proceeds paid the estate for the sale of such stock by the estate to the appellant.

In his complaint Cordoba alleged substantially that Mary Greene Wiswall, the decedent, was a resident of Sonora, Mexico, and at the date of her death, owned bearer shares of stock in Banco de Cananea. The stock was inventoried by the estate of Mary Greene Wiswall, deceased, Cochise County, Arizona, Probate File No. 7243, and also was inventoried in the Mexican administration proceedings at Cananea, Sonora, Mexico. Although the stock certificates were in the possession of the Arizona executor, the defendants, Virginia Greene

Sturdivant Miller, and Florence Greene Sharp, under the laws of Sonora, Mexico, sold their hereditary interests in the stock to the appellant.

Subsequently, the executor in the Arizona proceedings offered to sell the bearer shares of stock, which were physically in his possession, and the appellant "was forced to purchase the shares of stock from the Arizona executor," thereby paying twice. The appellant purchased the stock from the Arizona executor then demanded that Virginia Miller and Florence Sharp repay him. They refused to do so. The appellant sought to have the Arizona executor declared to be a trustee for his benefit contending that Virginia Miller and Florence Sharp would be unjustly enriched by double payment upon the decree of final distribution. [The complaint additionally sought relief against the defendants Miller and Sharp in the form of damages or imposition of a constructive trust on all proceeds received by them from the sale of the stock.]

The appellee moved for summary judgment contending that there was no genuine issue of material fact and that he was entitled to judgment as a matter of law because no liability existed either on his part or on the part of the estate of the decedent. In support of the motion, the appellee filed a stipulation of facts between himself as executor and appellant. The appellant filed a memorandum in opposition to the motion for summary judgment, wherein it was stated that the motion was premature for the reasons:

"1. There are other parties to this suit who are concerned greatly with the outcome of the motion, and who have not been given an opportunity to participate;

"2. There are numerous facts which have not been resolved and upon which testimony must be made."

It was further argued "that all of the facts alleged in the amended complaint—not all of which have been stipulated to or proven—set out a good cause of action under the theory of constructive trust

* * *." Unresolved issues, according to the appellant, were:

"1. Who got the double payment?

"2. Who was legally entitled to sell bank stock to Andres O. Cordoba?

"3. Who is entitled to retain the money, the estate or the two heirs of Mrs. Wiswall?"

No affidavits opposing the motion for summary judgment were filed. On the basis of the pleadings and the stipulation of facts, the trial court granted appellee's motion and entered judgment in accordance therewith.

The stipulation of facts included the following material facts: When Mrs. Wiswall died, she owned 2,828 shares of Banco de Cananea stock, which was personal property. At the time of her death these shares were in the Miners and Merchants Bank in Bisbee, Arizona. Under the terms of her will, Mrs. Miller was a beneficiary for life in the income from the trust of one sixth of the estate with the remainder over to Mrs. Miller's children. Mrs. Sharp was provided for in the will in like fashion. The probate of Mrs. Wiswall's estate was commenced in Cochise County, Arizona, and executors were duly appointed. At approximately the same time, a proceeding was started in the state of Sonora at Cananea.

Mrs. Wiswall's will was not a valid testamentary document in the Republic of Mexico, and could not be probated there in a domiciliary proceeding, because not properly witnessed according to Sonora statutes, and because it provided for trusts which are not legal in Mexico. Under the laws of the state of Sonora and the Republic of Mexico, the heirs-at-law of a deceased person become co-owners of the estate property prior to distribution. This ownership is subject only to the payment of taxes and administration costs. Once taxes and administration costs have been paid, each heir then has the right—even before distribution of the estate—to sell his interest in the estate. This right is subject only to the requirement that the other heirs or

co-owners be given the first opportunity to purchase the interest being sold.

With the approval of the other heirs-at-law, Mrs. Miller and Mrs. Sharp, respectively, entered into written agreements to sell their rights in the stock to appellant. As a result of these agreements, appellant paid Mrs. Miller the sum of $37,680 and Mrs. Sharp, the sum of $23,600. These agreements, which were in writing, for the sale of hereditary rights were made in Mexico, under Mexican law, subsequent to a determination by the Cochise County Superior Court that Mexico was the domiciliary probate and Arizona merely the ancillary probate.

There were creditors' claims, administration costs and estate taxes outstanding in Cochise County. For a period of about one and a half years preceding the execution of the written agreements with the heirs-at-law, the appellant negotiated for purchase of the stock from the Arizona estate. No sale was confirmed during this period of time. Approximately six months after execution of the agreements for purchase of the hereditary rights, the appellant entered into an agreement with the appellee for the purchase of the stock. This sale was confirmed.

Other facts established by the pleadings were that Mrs. Wiswall was residing in the state of Sonora, Republic of Mexico, at the time of her death, that the subject bearer shares of stock pertained to a Mexican corporation, doing business in Cananea, Sonora, Mexico, and that these shares of stock were included in the inventory of assets in both the Arizona probate proceeding and the Mexican proceeding.

## PROPRIETY OF SUMMARY JUDGMENT

■ Constructive trusts do not arise by agreement or from the *intention of the* parties, but by operation of law. Being limitless in form, they are raised by courts of equity where necessary to effectuate justice and prevent inequity. Dawson v. McNaney, 71 Ariz. 79, 85, 223 P.2d 907 (1950); Luplow v. Pasqualetti Properties, Inc., 101 Ariz. 90, 92, 416 P.2d 414 (1966). A wrongful holding on the part of one sought to be made a constructive trustee is a prerequisite. Markel v. Phoenix Title and Trust Company, 100 Ariz. 53, 58, 410 P.2d 662 (1966). A constructive trust may be imposed to prevent unjust enrichment. Restatement, Restitution § 160, Comment a. Therefore, in order for the appellant to prevail against the appellee, he had the burden of showing that the appellee acquired legal title to the proceeds of the sale of stock under circumstances which rendered inequitable the retention thereof by the appellee.

■ The appellant contends that the existence of the essential element of fraud, actual or constructive, presented a material factual issue which could not be resolved on a motion for summary judgment. We believe that the only allegation in the complaint which conceivably might be construed to allege fraud, was that appellant was "forced" to purchase the shares of stock from the appellee-executor. No facts are set forth as to the acts which induced the purchase or as to who performed the acts.

The stipulation of facts, a proper foundation for summary judgment, Stubblefield v. Johnson-Fagg, Inc., 379 F.2d 270, 272 (10th Cir. 1967) together with the admissions contained in the pleadings, negatived any claim of wrongful acquisition by the appellee of the proceeds from the sale of the shares of stock. The subject shares of stock were physically located in Cochise County, Arizona. Restatement, Conflict of Laws § 471 provides:

"A chattel physically present in a state, and not in the lawful possession of a foreign administrator or one holding under him can be administered in that state, unless the decedent's interest in the chattel is represented by a negotiable bill of lading or warehouse receipt which is not within the state."

■ The appellee was the duly appointed representative to adminster the decedent's

estate in Arizona. Notwithstanding the decedent was domiciled in Mexico at her death and the domiciliary representative is considered to have title to all decedent's personal property wherever found, the appellee's letters of administration authorized and empowered him to administer the shares of stock physically located in his jurisdiction. Estate of Nolan, 56 Ariz. 366, 371, 108 P.2d 391 (1940); Farnsworth v. Hubbard, 78 Ariz. 160, 167, 277 P.2d 252 (1954); Restatement, Conflict of Laws §§ 466–467.

■ There were creditors' claims, administration costs and estate taxes outstanding. The duties of an administrator with regard to the manner in which he is to conduct the administration are determined by the law of the state of appointment. Restatement, Conflict of Laws § 468. The appellee, under Arizona law, was therefore required to take possession of the subject shares of stock. A.R.S. § 14–472. During the course of administration, the appellee, subject to the probate court's approval, could sell the assets located within the jurisdiction. See Restatement, Conflict of Laws § 471, Comment a:

> "When a chattel can be administered in a state, the local administrator, under the direction of a competent court of that state, has full power to deal with the chattel in any way required in the administration of the estate. This includes taking possession of a chattel by the administrator, listing it in his inventory, preserving or improving it if necessary, *selling it upon order of the court,* and using the proceeds to pay debts and other claims against the estate."

(Emphasis supplied)

The term "chattel" includes share certificates. Restatement, Conflict of Laws § 467, Comment e. Application of the foregoing principles leads to the conclusion that the appellee acted properly in selling the shares of stock to the appellant.

Rule 56(e), as amended, Arizona Rules of Civil Procedure, 16 A.R.S., provides in pertinent part:

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The appellee's motion for summary judgment pointed out an absence of facts sufficient to establish a claim for relief by way of constructive trust. The appellant's conclusory allegations to the effect that he was "forced" to purchase the stock and that the appellee would be unjustly enriched if permitted to retain the proceeds of the sale, when attacked by a motion for summary judgment supported by proof of specific facts, placed on the appellant an obligation to present something which would show, when the trial arrived, that he would have some proof to support his complaint. Perez v. Tomberlin, 86 Ariz. 66, 340 P.2d 982 (1959); Luplow v. Pasqualetti Properties, Inc., supra. As stated by the Supreme Court of Arizona in the case of Dobson v. Grand International Bro. of Loc. Eng., 101 Ariz. 501, 421 P.2d 520 (1966):

> "It is well settled in the Federal Courts and in this jurisdiction that when the party moving for a summary judgment has made a prima facie showing that no genuine issues exist for trial, then the opponent of the motion has the burden to produce sufficient evidence to show that there is an issue, and the opposing party cannot defeat a motion for summary judgment and require a trial by a bare contention that an issue of fact exists. *He must show that evidence is available which would justify a trial of the issue.* [citations omitted]"

(Emphasis supplied) 101 Ariz. at 505, 421 P.2d at 524.

The trial court evidently concluded, and we think correctly so, that the appellant

failed to show that there was a genuine issue to be tried.

We find no merit in appellant's contention that the motion for summary judgment was premature for the reason that other named defendants had not yet filed their answers to the complaint, and therefore were deprived of their right to participate in the summary judgment proceedings. Rule 56(c), as amended, Arizona Rules of Civil Procedure, provides:

> "The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. * * *"

Thus we see no requirement, as urged by appellant, that a moving party wait until the case is at issue as to all parties. While these non-answering defendants were "indispensable parties," they were not indispensable to the adjudication of non-liability to the appellant on the part of the appellee.

For the foregoing reasons, the judgment is affirmed.

JOHN P. COLLINS, Superior Court Judge, concurs.

NOTE: Judges JOHN F. MOLLOY and HERBERT F. KRUCKER having requested that they be relieved from consideration of this matter, Judges JOHN P. COLLINS and ROBERT O. ROYLSTON were called to sit in their stead and participate in the determination of this decision.

ROYLSTON, Superior Court Judge (dissenting):

I dissent. As stated by the majority opinion, constructive trusts are limitless in form, and are raised by courts of equity where necessary to effectuate justice and prevent inequity. A constructive trust may be imposed to prevent unjust enrichment. Restatement, Restitution § 160, Comment a.

The appellant contends that by paying the heirs for their interest in the stock, and by thereafter paying the appellee for the stock certificates, either the heirs or the appellee-executor is unjustly enriched. The appellant also contends that he was "forced" to purchase the certificates to prevent the bearer stock from being passed to a bona fide purchaser and to protect the money already spent in purchasing the hereditary rights. Having paid twice for the same stock, the appellant contends he should recover from either the appellee-executor, or the heirs, and, therefore, is entitled to impress a constructive trust on any funds available in the hands of any of the parties, if those funds resulted from these transactions.

Is the allegation of being "forced" to make a purchase resulting in an unjust enrichment sufficient to preclude the granting of a motion for summary judgment? I think that it is. As this court has previously stated:

> "The Supreme Court of Arizona has suggested that trial judges should exercise great care in granting motions for summary judgment, notwithstanding the desirability of prompt dispatch of judicial business. [citing cases]" State v. Ashton Co., 4 Ariz.App. 599, 602, 422 P.2d 727, 730.

Our Supreme Court, in Boozer v. Arizona Country Club, Ariz., 434 P.2d 630 (1967), recently stated:

> "If the material facts, although not in dispute, are uncertain, a summary judgment is improper. [citing cases]
>
> "'It [summary judgment] should be granted only where it is perfectly clear that no issue of fact is involved *and inquiry into the facts is not desirable to clarify the application of the law. * * * And this is true even where there is no dispute as to the evidentiary facts in the case, but only as to the conclusions to be drawn therefrom.'* [Italics ours] Kirkpatrick v. Consolidated Underwriters, 227 F.2d 228 (4th Cir. 1955)
>
> "'The facts and circumstances, although in no material dispute as to their actuality, reveal aspects from which incon-

**150**

sistent hypotheses might reasonably be drawn and as to which the minds of reasonable men might differ. The drawing of inferences and the acceptance of hypotheses arising out of the facts are ordinarily attributes that the judicial process has conferred upon the finder of facts. * * *

\* \* \* \* \* \*

" ' \* \* \* The impact of particular circumstances upon inference arising from an admittedly existing factual situation calls for a factual determination which is the function of the trier of facts and not that of the court in disposing of a motion for summary judgment * * *. A judge may not, on a motion for summary judgment, draw fact inferences.'

\* \* \* \* \* \*

"Empire Electronics Co. v. United States, 311 F.2d 175, 180 (2d Cir. 1962) [Italics ours.]"

The *Boozer* case, supra, also quotes with approval from Alvado v. General Motors Corporation, 229 F.2d 408 (2d Cir. 1955). The allegation with which the court was concerned in *Alvado* was that the defendant "intended to discriminate against veterans." In reversing the summary judgment, the court stated:

"In such circumstances (especially where, as here, such a matter as good faith, or the like, is crucial) the granting of a summary judgment is error. For the opponent of the motion is thereby deprived of the opportunity to cross-examine the movant's officials, and is prevented from having a trial court assisted in its evaluation of their credibility by observing their demeanor while they testify. * * * the failure of the opponent of the motion to file a counter-affidavit has no significance. * * * 'In many recent cases, where motive, intent, subjective feelings and reactions, consciousness and conscience were to be searched, and examination and cross-examination were necessary instruments in obtaining the truth, we have pointed out that and why

the issues may not be disposed of on summary judgment.' " 229 F.2d at 412.

Certainly, an allegation of being "forced" should be treated similar to "motive, intent, subjective feelings and reactions, consciousness and conscience."

I would reverse the trial court and allow the appellant the opportunity to prove his allegations at trial.